19 F.3d 28
 24 UCC Rep.Serv.2d 698
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re John MARTIN-MUSUMECI, etc., Debtor.
John MARTIN-MUSUMECI, etc., Plaintiff-Appellant,
v.
LAW OFFICES OF HERBERT HAFIF PENSION AND PROFIT SHARING
PLAN, Defendant-Appellee.
 No. 92-16528.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1994.
Decided March 10, 1994.
 
 1
 Before SCHROEDER, NOONAN, Circuit Judges, and JONES,* District Judge
 
 
 2
 MEMORANDUM**
 
 INTRODUCTION
 
 3
 Appellant, a Chapter 11 debtor, alleges that his attorney's pension plan, which loaned appellant money, did not have the right to strictly foreclose on the two percent interest in a trust the plan held as security for the loan. Appellant alleges that the plan was incapable of possessing the trust interest, a general intangible, and as such could not effect a strict foreclosure.
 
 
 4
 Although as a rule a general intangible such as a trust interest cannot be possessed, we affirm the district court because based on this unique set of facts we find the plan was in possession of the collateral and could strictly foreclose when appellant defaulted.
 
 FACTS AND PROCEEDINGS
 
 5
 The loan at the heart of this case was made on July 11, 1984 by attorney Herbert Hafif to his then-client, John Martin-Musumeci ("debtor"), who eventually filed for bankruptcy. The $350,000 loan came from funds held by the Herbert Hafif Pension and Profit Sharing Plan ("the plan").
 
 
 6
 Debtor executed a note in favor of the plan secured by a two percent interest of the undivided beneficial interest in the Marriner Note Trust ("the trust"), also known as the Micro/Vest trust. According to appellee, Micro/Vest was a corporation with assets of a single note which on its face gave the holder the right to convert the outstanding balance of the note into 20 percent of the shares of Computerland stock. The note executed by debtor (not to be confused with the note Micro/Vest owned) provided that in the event debtor failed to make any interest installment payments when due, the plan may, within 90 days of making a written demand for payment, sell the two percent interest in the trust ("the two points"). The note also provided that if the two points were not sold within the 90 day period, then:
 
 
 7
 full title to said security shall transfer to the holder [the plan] and shall be deemed full satisfaction of the entire obligation; I [debtor] shall not be liable for any real or alleged deficiency.
 
 
 8
 The note provided that Hafif had the right to convert one-half of one percent of the interest in the trust as repayment as an alternate remedy.
 
 
 9
 Debtor failed to make the January 11, 1985 interest payment. By letter dated March 13, 1985, Hafif's office, on behalf of the plan, gave debtor 15 days' notice and accelerated the principal balance on the note. This notice letter also said, "We certainly do not wish to exercise our right of conversion." When debtor failed to respond, Hafif's office sent debtor another letter dated August 13, 1985, stating that pursuant to the terms of the agreement, the plan had foreclosed on the note. This letter noted:
 
 
 10
 [T]his is not a security we can sell. This is especially true in light of the lawsuits against Microvest [sic]. We can not subject the pension plan participants to exposure to multi-million dollar lawsuits over the sale of the security.
 
 
 11
 Furthermore, since your efforts to sell the security have been unavailing, efforts which we appreciate have been made more difficult by the lawsuits, and since we owe the utmost fiduciary duty to our plan's participants, the plan has foreclosed on the security.
 
 
 12
 Hafif's office also told debtor that should he wish to repurchase the two points, the plan would "seriously consider any good faith, reasonable and fair offer."
 
 
 13
 Debtor received a third letter from the plan on August 25, 1985 notifying him that, while the plan was now the full owner of the two points, he had an additional 60 days to buy back any portion of the two points for the principal amount. The letter contained additional provisions for buying back the two points later for more money. Debtor did not respond to this last offer.
 
 
 14
 Three years later debtor filed for bankruptcy. In 1990, five years after the plan had foreclosed on the two points, debtor filed suit in bankruptcy court against the plan alleging that the foreclosure violated California Commercial Code Sec. 9-504(3), which covers the sale of collateral after a default. Following trial, the bankruptcy court found that the plan had complied with the provisions of California Commercial Code Sec. 9-505(2), which provides that a secured party in possession can strictly foreclose if notice has been given and there is no objection within a 21-day period.[1]
 
 
 15
 Debtor unsuccessfully moved to alter judgment and then appealed to the district court, which affirmed the judgment of the bankruptcy court on July 30, 1992.
 
 STANDARD OF APPELLATE REVIEW
 
 16
 Because this panel is in as good a position as the district court to review the bankruptcy court's findings, we independently review the bankruptcy court's decision. Matter of Pizza of Hawaii, Inc., 761 F.2d 1374, 1377 (9th Cir.1985). We review the bankruptcy court's findings of fact under the clearly erroneous standard; conclusions of law are reviewed de novo. Id.
 
 
 17
 Whether or not the points were capable of possession and whether the plan did in fact possess them are questions of law we review de novo. Whether or not notice was given is a factual determination, In re Professional Inv. Properties of America, 955 F.2d 623, 626 (9th Cir.1992), cert. denied, 113 S.Ct. 63 (1992); thus, we review the notice issue for indication that the district court's ruling was clearly erroneous.
 
 DISCUSSION
 
 18
 Section 9-505(2) "presents an uncomplicated blueprint for strict foreclosure on default." 2 White & Summers, Uniform Commercial Code 586 (3rd ed. 1988) (hereinafter "White & Summers"). The California code section, like its UCC counterpart, provides the secured party the remedy of strict foreclosure in the event the debtor defaults, a remedy that allows the secured party to retain the collateral in full satisfaction of the debt. In order to meet the requirements of a strict foreclosure under Sec. 9-505(2), there must be (1) a default; (2) a secured party in possession of the collateral; (3) written notice sent to the debtor by the secured party that the secured party proposes to retain the collateral in full satisfaction of the debt; and (4) a period of 21 days during which time the debtor may object to the proposed retention of the collateral. White & Summers at 586-87.
 
 
 19
 Because debtor never made any payments on the loan, there is clearly a default. Debtor, then, seeks to overturn the district court's decision on three grounds: (1) the interest in the trust is a general intangible that cannot be possessed and thus Sec. 9-505(2) does not apply; however, if Sec. 9-505 does apply, (2) the plan did not give adequate notice of its proposal to retain the collateral in satisfaction of the debt as required by Sec. 9-505(2); and (3) debtor gave proper notice of his objection to the plan's retention of the collateral as required by Sec. 9-505(2).
 
 
 20
 1. Was the trust interest, as a general intangible, incapable of possession?
 
 
 21
 Appellant is correct in his assertion that as a general rule, a general intangible cannot be possessed.
 
 
 22
 Since the creditor's possession (and the debtor's lack of it) is designed to put third parties on notice, the collateral must be the type that one can see, touch, and move. The collateral must have a physical embodiment recognizable as exclusively representing the right. Thus it follows that accounts and general intangibles cannot be perfected by possession.
 
 
 23
 White & Summers at 348. No perfection of general intangibles by possession is possible because general intangibles, by their nature, cannot be possessed.
 
 
 24
 However, under these limited circumstances and only for purposes of Sec. 9-505 applicability, we find that the plan was in possession of the two points in the trust by virtue of a letter from the treasurer of Micro/Vest to Hafif as the plan representative. That letter reads, in pertinent part:
 
 
 25
 As Treasurer of Micro/Vest Corporation, I am authorized to verify the existence and relative size of various beneficial interests and the identities of the holders ...
 
 
 26
 This is to verify and acknowledge that Micro/Vest Corporation, as trutee (sic), has been advised and recognizes that Mr. John Martin-Musumeci has transferred an interest to you equal to two percent (out of 100%) of the full undivided beneficial interest in the trust, which interest is to be held by you as security for a promissory note made by Mr. Martin-Musumeci. I acknowledge that Mr. Martin-Musumeci has the authority and ownership necessary to make such transfer valid. I further agree that this corporation shall act in accord with writings from your office regarding disposition of said 2% undivided beneficial interest.[2]
 
 
 27
 This letter, dated July 16, 1984, has the effect of giving the plan the status of a secured party in possession of collateral, which in turn qualified the plan to effect a strict foreclosure pursuant to Sec. 9505(2). As one court explained:
 
 
 28
 Thus, the possession of collateral by a bailee who has received notification of the interest of a secured party is considered to be possession by the secured party.
 
 
 29
 Kruse, Kruse & Miklosko v. Beedy, 353 N.E. 2nd 514, 539 (Ind.App.1976) ("Kruse "). This ruling was cited approvingly in 9 Anderson, Uniform Commercial Code 801 (3rd ed. 1985):
 
 
 30
 A secured party is in possession of the collateral for the purposes of UCC Sec. 9-505 while the collateral is in the possession of an escrow who knew of the security interest at the inception of the escrow arrangement.
 
 
 31
 Based on the letter from the Micro/Vest treasurer, who was acting as a bailee and had notice of the plan's interest, we find that the plan was in possession of the two points for purposes of Sec. 9-505(2) and could proceed under that statute.
 
 
 32
 2. Did the plan give adequate notice of its proposal to retain the collateral ?
 
 
 33
 The bankruptcy court found that the March 13, 1985 letter served as notice that the plan was proposing to keep the collateral in satisfaction of the debt. This letter specifically indicates that the plan is giving "notice pursuant to the terms and conditions of the note." Pursuant to the agreement, debtor was given 90 days to find a buyer for the two percent. The bankruptcy court found that debtor "neither found a buyer, nor paid off the note, nor protested the impending foreclosure called for in the agreement."
 
 
 34
 The plan again warned debtor about foreclosure in the August 13, 1985 letter and in a third letter dated August 25, 1985. In this latter correspondence, the plan gave debtor 60 days to buy back the two points, which the bankruptcy court found made debtor's assertion that he thought it was too late to object to the foreclosure not credible.
 
 
 35
 The bankruptcy judge's determination that notice was given was not clearly erroneous. Furthermore, even if we review de novo reasonableness of notice as a matter of law, as debtor urges, we find the three letters sent to debtor over a six-month period constituted notice that the plan was proposing strict foreclosure. Although the letters of August 13 and 25 present the foreclosure as a fait accompli, both letters also give debtor a repurchase option. In fact, the letter of August 25 gives debtor 60 days to buy back the two points, which exceeds the statutory requirement of 21 days for the debtor to file objections. Still the plan heard nothing from debtor.
 
 
 36
 We find that debtor received notice regarding the plan's proposal to strictly foreclose.
 
 
 37
 3. Did debtor give proper notice of his objection ?
 
 
 38
 Debtor maintains that if the literal requirements of "possession" and "written proposal" are to be read out of Sec. 9-505(2), then the court should find that a reference to debtor's objection in Hafif's August 25, 1985 letter "complies with the spirit" of Sec. 9-505(2)'s requirement that objections be filed in writing. This argument is without merit. The statute explicitly requires written objections, which debtor failed to make.
 
 
 39
 We find debtor failed to give proper notice of his objection.
 
 CONCLUSION
 
 40
 The judgment of the district court is AFFIRMED.
 
 NOONAN, Circuit Judge, dissenting:
 
 41
 As the disposition of the court acknowledges, a general intangible cannot be possessed. As possession was necessary under California law for foreclosure, no foreclosure occurred. I would reverse.
 
 
 
 *
 The Honorable Robert E. Jones, United States District Judge, District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 This section reads:
 In any case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subdivision. In the case of consumer goods no other notice need be given. In other cases notice shall be sent to any other secured party from whom the secured party has received (before sending his notice to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. If the secured party receives objection in writing from a person entitled to receive notification within 21 days after the notice was sent, the secured party must dispose of the collateral under Section 9504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.
 Cal.Com.Code Sec. 9-505(2).
 
 
 [2]
 The letter also explains that Micro/Vest Corporation is the plaintiff in litigation to enforce conversion of the note into capital stock